IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MICHAEL JOHNSON, individually and on behalf of others similarly situated | * | CIVIL ACTION NO.: 5:23-CV-00462-M-RJ |
| VERSUS | * | |
| PHP OF NC, INC. and JUSTINE WIGGINS | * | |

## FIRST AMENDED COMPLAINT – COLLECTIVE ACTION

Plaintiff, Michael Johnson, individually and on behalf of all other similarly situated current and former habilitation technicians, who were classified as independent contractors by Defendants, PHP of NC, Inc. and Justine Wiggins, brings this collective action, and alleges as follows:

### I.  JURISDICTION

1. Plaintiff brings claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.* to recover minimum wages and unpaid overtime compensation under §16(b) of the FLSA. This Court has jurisdiction under 28 U.S.C. §1331.

### II.  VENUE

2. Venue is proper in this District as Defendants conducted business in the Eastern District and a substantial part of the events giving rise the claims occurred in this District.

3. Furthermore, Defendant PHP of NC, Inc.'s principal office is located in Durham County, State of North Carolina.

### III.  PARTIES

4. Plaintiff, Michael Johnson, is domiciled in Durham County, State of North Carolina, and was employed by Defendant from approximately 2015 until October 11, 2019, and

then again from approximately January, 2020 to approximately June, 2023 as a habilitation technician, or "HAB Tech", who provided support to Defendants' clients who have intellectual and developmental disabilities. Plaintiff's hours varied from week to week but he regularly worked more than forty (40) hours a week.

5. Plaintiff has consented to filing the instant action. (Exhibit "A").

6. Defendant PHP of NC, Inc. (hereinafter referred to as "PHP") is a North Carolina corporation with its principal place of business located at 4125 Ben Franklin, Durham, North Carolina 27704.

7. Defendant Justine Wiggins (hereinafter referred to as "Wiggins") is an individual domiciled at 605 Red Fox Trail 31, Hillsborough, North Carolina 27278.

8. Defendants employed Plaintiff and participated directly in employment decisions regarding Plaintiff's rights for which he seeks redress in this case.

### IV. FACTS

9. PHP is a support services company for individuals who are intellectually and developmentally disabled. https://phpofncinc.com/services/.

10. Plaintiff and the collective members were/are employed by Defendants as HAB Techs who provided support to Defendants' clients.

11. Plaintiff and the collective members were all paid on an hourly basis.

12. In an effort to avoid their obligations under the FLSA, Defendants misclassified Plaintiff and similarly situated workers as independent contractors.

13. Defendants also required, and continue to require, these workers to perform off-the-clock, unpaid work including, training and attending staff meetings.

2

14. Plaintiff's hours varied from week to week during his employment with Defendants, but he regularly worked more than forty (40) hours in a workweek.

15. For example, during the work period of September 16, 2022 to September 30, 2022, Plaintiff was paid for one hundred four (104) hours that he worked providing support services. He was paid straight time for those hours but was not paid an overtime premium for the hours worked over forty (40) in the workweek, nor was he compensated for off-the-clock work.

16. Furthermore, Defendants did not compensate Plaintiff and the collective members for attending mandatory staff meetings, and company-specific training.

17. Upon information and belief, the collective members were also regularly scheduled to and did work more than forty (40) hours in a workweek.

18. Defendants misclassified their HAB Techs as independent contractors when in fact, they were employees under the meaning of the FLSA.

19. The misclassified HAB Techs, including Plaintiff, were required to comply with Defendants' policies and procedures which were set forth in written company policies.

20. The misclassified HAB Techs, including Plaintiff, were supervised by employees of Defendants and were subject to discipline.

21. The misclassified HAB Techs, including Plaintiff, received all assignments from Defendants and they relied on Defendants for their work assignments.

22. Although Defendants advertised and posted job openings for "employees," Defendants misclassified their HAB Techs as independent contractors to avoid the pay requirements under the FLSA. https://phpofncinc.com/employment/.

23. Defendants directed the work of Plaintiff and all HAB Techs and provided substantial oversight of their activities.

24. HAB Techs, including the Plaintiff and collective members, were monitored by PHP's Qualified Professionals.

25. The work performed by Plaintiff and the collective members was integral to Defendants' business. Without their work, Defendants could not have performed their contracted responsibilities for their clients.

26. Defendants profited directly from the work performed by Plaintiff and the collective members.

27. Plaintiff and the collective members could not negotiate their compensation with Defendants' clients and they did not share in the profits.

28. In short, Plaintiff and the collective members were economically dependent on Defendants.

29. Defendants paid HAB Techs who were misclassified as independent contractors by the hour, and paid straight time for all hours worked, except they did not pay any wages for time spent attending mandatory training and staff meetings.

30. Defendants failed to pay an overtime premium to Plaintiff and collective members for all hours worked over forty (40) in a workweek.

31. Defendants required, and continue to require, the collective members to perform off-the-clock work including completing company-specific training, and attending mandatory staff meetings.

32. The attendance at training and staff meetings was mandatory, outside of normal hours, job related and no other work was being performed at the time. USDOL Fact Sheet #22: Hours Worked Under the Fair Labor Standards Act (FLSA), available at https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/whdfs22.pdf.

33. Plaintiff and the collective members were required to use their personal vehicles to transport Defendants' clients as part of their job.

34. HAB Techs were/are also required to bear some expenses of their employment, such as the use of cell phones, costs of wear and tear/depreciation on their personal vehicles and the costs of fuel. Defendants did not reimburse HAB Techs for these expenses, and HAB Techs were solely responsible for paying them out-of-pocket.

35. The Internal Revenue Service ("IRS") sets a standard mileage reimbursement rate that is meant to apply to the average driver. During the applicable period, the IRS business mileage reimbursement rate ranged from $0.56 to $0.65.5 per mile. Likewise, reputable companies that study the cost of owning and operating a motor vehicle and/or reasonable reimbursement rates, including the AAA, have determined that the average cost of owning and operating a vehicle is considerably higher than the federal reimbursement rates.

36. Defendant' failure to reimburse automobile expenses and other expenses constitutes a "kickback" to Defendants such that the wages paid to Plaintiff and other HAB Techs are not paid free and clear of all outstanding obligations to Defendants.

37. In light of the unreimbursed expenses HAB Techs were forced to bear, there are workweeks when HAB Techs do not earn the federal minimum wage of $7.25 per hour for all hours worked.

38. Defendants were aware that Plaintiff and other HAB Techs were not paid the minimum wage, and that they worked overtime hours, because they scheduled or permitted HAB Techs to work more than forty (40) hours in a workweek, and set compensation rates that resulted in HAB Techs' earnings falling below federal minimum wage requirements (when taking into consideration total hours worked and expenses).

39. Plaintiff is aware of other current and former HAB Techs of Defendants who were subject to the same payroll practice.

## V. COLLECTIVE DEFINITION

40. The collective of similarly situated individuals sought to be certified under 29 U.S.C. § 216(b) as a collective action is defined as:

> All habilitation technicians who performed work for PHP of NC, Inc. as an independent contractor at any time since three (3) years prior of filing this Complaint. ("Collective Members").

## VI. COVERAGE UNDER THE FLSA

41. At all times hereinafter mentioned, Defendants are and have been employers within the meaning of 29 U.S.C. §203(d).

42. At all times hereinafter mentioned, Defendants are and have been an enterprise within the meaning of 29 U.S.C. §203(r).

43. At all pertinent times, Defendants have been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. §203(s)(1).

44. Defendants have had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

45. At all times hereinafter mentioned, Plaintiff, and all those similarly situated, were individual employees engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §207.

## VII. VIOLATIONS OF THE FAIR LABOR STANDARDS ACT

46. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

47. Pursuant to the FLSA, 29 U.S.C. §207, employers are generally required to pay overtime compensation at an hourly rate of 150% of an employee's regular rate of pay for hours worked over forty (40) in a workweek.

48. Plaintiff and the collective members are not exempt from the overtime requirements of the FLSA.

49. Plaintiff and the collective members were not compensated in accordance with the FLSA because they were not paid overtime wages for all hours worked over forty (40) hours in a workweek for all weeks.

50. Furthermore, Defendants did not include off-the-clock work, such as mandatory training and attending staff meetings, in the calculation of overtime compensation for Plaintiff and members of the collective.

51. Defendants required, and continue to require, the collective members to perform off-the-clock work including company-specific training and attending staff meetings.

52. Furthermore, Plaintiff and the similarly situated HAB Techs were required to bear expenses associated with use of their personal cell phones, and automobiles, such as the costs of wear and tear/depreciation on their personal vehicles and the costs of fuel.

53. Defendants did not reimburse HAB Techs for these expenses, and HAB Techs were solely responsible for paying them out-of-pocket.

54. Defendant' failure to reimburse automobile and other expenses constitutes a "kickback" to Defendants such that the wages paid to Plaintiff and other HAB Techs are not paid free and clear of all outstanding obligations to Defendants.

55. In light of the unreimbursed expenses HAB Techs must bear, there are workweeks when HAB Techs do not earn the federal minimum wage of $7.25 per hour for all hours worked.

56. Defendants were aware that Plaintiff and other HAB Techs were not paid the minimum wage, and that they worked overtime hours, because they scheduled or permitted HAB Techs to work more than forty (40) hours in a workweek, and set compensation rates that resulted in HAB Techs' earnings falling below federal minimum wage requirements (when taking into consideration total hours worked and expenses).

57. Defendants knowingly, willfully, or in reckless disregard of the law, maintained an illegal practice of misclassifying Plaintiff and the collective members as independent contractors and failing to pay overtime compensation for all hours worked over forty (40) in workweek, including off-the-clock work.

58. Defendants further violated the FLSA by failing to pay straight time for all off-the-clock hours Plaintiff and the collective members worked in weeks where they worked in excess of forty (40) hours. Plaintiff and the collective members are entitled to receive overtime "gap pay" under the FLSA.

59. Defendants knowingly, willfully, or in reckless disregard of the law, maintained an illegal practice of not paying the federally-mandated minimum wages when taking into consideration total hours worked and expenses borne by the employees.

## VIII. COLLECTIVE ALLEGATIONS

60. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

61. Plaintiff files this action on behalf of himself and other misclassified HAB Techs as defined above.

62. Defendants' practice and policy of misclassifying their employees as independent contractors and not paying overtime affects Plaintiff and the collective members, and was a willful violation of the FLSA.

63. Furthermore, Defendants' practice and policy of not paying overtime for all hours worked over forty (40) in a workweek including associated off-the-clock work, affects Plaintiff and the collective members, and is a willful violation of the FLSA.

64. Defendants' practice and policy of misclassifying Plaintiff and the collective members as independent contractors, and not paying overtime and gap time, affects Plaintiff and the collective members and was a willful violation of the FLSA.

65. Plaintiff and the collective members were further denied federal minimum wages when taking into consideration total hours worked and expenses incurred for use of their personal vehicles.

66. The collective members are victims of Defendants' unlawful compensation practices and are similarly situated to Plaintiff in terms of job duties, pay and employment practices.

67. Defendants' failure to pay overtime compensation as required by the FLSA results from a generally applicable, systematic policy and practice and is not dependent on the personal circumstances of any individual employee. Thus, Plaintiff is similarly situated to the members of the collective.

68. The specific job titles or precise job requirements of the collective members do not prevent collective treatment under the FLSA. All employees, regardless of their precise job requirements or rates of pay, are entitled to be properly compensated for all hours worked in excess of forty (40) hours per workweek at the overtime rate, and at or above the minimum wage rate.

Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

## IX. JOINT EMPLOYER ALLEGATIONS

69. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

70. At all times pertinent hereto, specifically including the collective period, Wiggins was the founder, owner, manager and CEO of PHP.

71. Wiggins exercised supervisory and managerial responsibilities and substantial control over the terms and conditions of Plaintiff's and the collective members' work including, but not limited to, assigning work, establishing hourly rates, misclassifying workers as independent contractors, and hiring and firing employees.

72. Wiggins played a role in the administration of PHP, and was actively involved in managing the operations of PHP.

73. Further, Wiggins was and is responsible for the administration of the business affairs of PHP and she exercised complete control over the work situation and conditions of its employees.

74. Wiggins was and is responsible for the payroll practices of PHP, but not limited to, the payroll practices complained of herein.

75. Wiggins was and is vested with authority to, and actually acted directly or indirectly for, and had operational control over PHP's business activities including managerial responsibilities for all aspects of operations and its employees.

76. Wiggins had the authority to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

10

77. Wiggins approved and implemented the exclusive use of independent contractors which denied Plaintiff and collective members their earned wages.

78. Accordingly, Wiggins was and is an "employer" under the FLSA, as such, is jointly and severally liable with PHP for damages for their failure to comply with the FLSA including all damages claimed herein.

## RELIEF SOUGHT

**WHEREFORE**, Plaintiff, individually, and on behalf of the collective members, pray for judgment in their favor and against Defendants as follows:

1. For an Order recognizing this proceeding as a collective action under § 216(b) of the FLSA, and ordering notice to the collective members at the earliest opportunity to ensure the collective members' claims are not lost to the FLSA statute of limitations;

2. For an Order finding Defendants liable for unpaid overtime and gap time wages due to Plaintiff and the collective members and for liquidated damages equal in amount to the unpaid compensation under the FLSA;

3. For an Order finding Defendants liable for minimum wage violations and for liquidated damages equal in amount to the unpaid compensation under the FLSA;

4. For an award of costs of this action as provided under the FLSA;

5. For an award of attorneys' fees as provided under the FLSA;

6. For an award of pre- and post-judgment interest; and

7. For any and all other and further relief as may be necessary and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully Submitted:

By: */s/ Brian L. Kinsley*
    Brian L. Kinsley (N.C. Bar Roll No. 38683)
    blkinsley@crumleyroberts.com
    CRUMLEY ROBERTS, LLP
    2400 Freeman Mill Road, Suite 200
    Greensboro, NC 27406
    Telephone: 336-333-9899
    Facsimile: 336-333-9894

    And

By: */s/ Scott E. Brady*
    Philip Bohrer (admitted pro hac vice)
    *phil@bohrerbrady.com*
    Scott E. Brady (admitted pro hac vice)
    *scott@bohrerbrady.com*
    BOHRER BRADY, LLC
    8712 Jefferson Highway, Suite B
    Baton Rouge, Louisiana 70809
    Telephone: (225) 925-5297
    Facsimile: (225) 231-7000

12

Case 5:23-cv-00462-M-RJ    Document 26    Filed 09/28/23    Page 12 of 12