IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:23-CV-462-M

| | |
|---|---|
| MICHAEL JOHNSON, *individually and on behalf of others similarly situated*, | )<br>)<br>)<br>) |
| Plaintiff, | )  ORDER |
| v. | )<br>) |
| PHP OF NC, INC. and JUSTINE WIGGINS, | )<br>) |
| Defendants. | ) |

This matter is before the court on Plaintiff Michael Johnson's unopposed motion to approve settlement,[1] as amended. [DE-67, -69]. The motion has been fully briefed and is referred to the undersigned for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). For the reasons that follow, Plaintiffs' motion is allowed, and the Settlement Agreement, as amended, is approved.

## I. Background

Named Plaintiff Michael Johnson ("Named Plaintiff") brought this action on behalf of himself and all others similarly situated under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, asserting claims for minimum wage violations and unpaid overtime wages against PHP of NC, Inc., and its owner, Justine Wiggins (collectively, "Defendants").[2] Both claims rest upon the allegation that Johnson and other PHP employees were improperly classified as independent contractors under the FLSA. *See generally* Am. Compl. [DE-26]. On May 21, 2024,

---

[1] While the motion refers to a singular Plaintiff, this Order refers to "Plaintiffs" for ease of reference, since the instant case and its resolution pertain to a prospective collective action and various opt-in Plaintiffs.
[2] The action was filed in the Middle District of North Carolina but transferred to the Eastern District shortly thereafter. *See* [DE-1].

the court granted in part and denied in part Plaintiffs' motion to conditionally certify collective action and approve notice, [DE-38], and subsequently, notice of the lawsuit was disseminated to putative plaintiffs, [DE-55]. After the notice period closed, the parties engaged in settlement discussions, which ultimately resulted in an agreement to settle Plaintiffs' FLSA claims without any admission of liability by Defendants. [DE-63]. The instant motion was then filed consistent with the Settlement Agreement.

## II.     Discussion

The FLSA permits an employee suing his employer for violating minimum wage and overtime compensation requirements to sue individually or in a collective action on behalf of himself and all other "similarly situated employees." *See* 29 U.S.C. § 216(b). Critically, though, the Fourth Circuit imposes a "judicial prohibition against the unsupervised waiver or settlement of [FLSA] claims." *Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007), *superseded on other grounds by regulation*, 73 Fed. Reg. 67987 (Nov. 17, 2008), *as recognized in Whiting v. Johns Hopkins Hosp.*, 416 Fed. App'x 312, 314 (4th Cir. 2011). As a result, parties to an FLSA action must present any settlement agreement to the court for approval prior to settling their FLSA claims.

Here, the parties seek entry of the settlement agreement filed at [DE-67-2] (referred to herein as the "Settlement Agreement"), which includes, *inter alia*, carve-outs from the total settlement amount for attorneys' fees, litigation costs, and service awards for the Named Plaintiff and Plaintiffs who opted into the putative class prior to receiving court-approved notice of the FLSA action (the "Early Opt-In Plaintiffs"). *See* Pls.' Mem. [DE-67-1] at 3–22. In pertinent part, the Settlement Agreement provides for a total settlement amount of $150,000, and states that of that sum, $81,934.86 will be divided amongst the Plaintiffs (including the Named Plaintiff, Early

Opt-In Plaintiffs, and plaintiffs who opted into the putative class after receiving notice of the FLSA action, or the "Opt-In Plaintiffs") in accordance with the chart included at [DE-69-1]; $5,500.00 will be paid as service awards to the Named Plaintiff and Early Opt-In Plaintiffs, with $2,500.00 paid to the Named Plaintiff and the remaining $3,000.00 balance split so that $1,000.00 is distributed to each of the three Early Opt-In Plaintiffs; and $62,083.14[3] will be paid to Plaintiffs' counsel for attorneys' fees, as well as an additional $482.00 for expenses incurred in this action. [DE-67-2] at 5; [DE-69]. The court will discuss the total settlement amount and individual settlement payments, attorneys' fees, litigation costs, and service awards in turn.

### A. The Total Settlement Amount and Individual Settlement Payments

The Fourth Circuit has not specifically identified the factors for evaluating proposed FLSA settlement agreements, but trial courts within it, including this court, have previously taken guidance from an Eleventh Circuit case, *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982). *See, e.g., Gorrell v. Wake Cnty.*, No. 5:21-CV-00129-M, 2022 WL 3222003, at *2 (E.D.N.C. Aug. 9, 2022) (citing *Vazquez-Aguilar v. Gasca*, 513 F. Supp. 3d 675, 680 (E.D.N.C. 2021)); *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 407–08 (D. Md. 2014) ("Although the Fourth Circuit has not addressed the factors to be considered in approving FLSA settlements, district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in Lynn's Food Stores."). The *Lynn's Food Stores* factors include the following: whether (1) there is a bona fide dispute about the defendant's liability under the FLSA, (2) the settlement is fair and reasonable, and (3) the attorney's fees and costs awarded are reasonable. *See Gorell*, 2022 WL 3222003, at *2 (citing

---

[3] Due to rounding errors that resulted in a $0.01 discrepancy between the amount allocated for settlement and the amounts listed for distribution in the Settlement Agreement, the parties reduced the request for attorneys' fees by $0.01. [DE-69].

3

*Vazquez-Aguilar*, 513 F. Supp. 3d at 680). After considering the *Lynn's Food Stores* factors, the court must also determine whether the proposed settlement "furthers or 'impermissibly' frustrates implementation of the FLSA in the workplace." *Id.* (quoting *Robinson v. Harrison Transp. Servs., Inc.*, No. 5:15-CV-298-F, 2016 WL 3647616, at *1 (E.D.N.C. June 30, 2016) (collecting cases)).

### 1. A Bona Fide Dispute Exists

The parties contend that the first of the *Lynn's Food Stores* factors is satisfied because "the *bona fide* disputes and unresolved dispositive legal issues are numerous" in this action. Pls.' Mem. [DE-67-1] at 6. A dispute is bona fide where there is some doubt about the plaintiffs' success on the merits and their potential for recovery at trial. *See Hall v. Higher One Machs., Inc.*, No. 5-15-CV-670-F, 2016 WL 5416582, at *6 (E.D.N.C. Sept. 26, 2016) (citing *Lynn's Food Stores*, 679 F.2d at 1354). The parties may disagree about "the existence of liability under the Act or . . . the amount of such liability." *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 703 n.12 (1945). Evidence of a bona fide dispute may include the parties' motions, the pleadings, and representations made in the settlement agreement. *See Hall*, 2016 WL 5416582, at *6 (noting that the parties' joint motion did not address the "bona fide" issue but finding a dispute existed by looking to the complaint and proposed settlement agreement).

Here, there is ample evidence supporting the conclusion that the Settlement Agreement represents a good faith compromise of a bona fide dispute concerning Plaintiffs' classification as independent contractors and the relief they claim they are owed under the FLSA because of the alleged misclassification. Defendants have at all relevant times—including within the text of the Settlement Agreement itself—denied liability and disputed all aspects of Plaintiffs' allegations, most notably by claiming that Plaintiffs were properly classified as independent contractors. *See, e.g.*, Answer [DE-20] at 18–25 (asserting numerous affirmative defenses such as the statute of

4

limitations, Plaintiffs' proper classification as independent contractors, and Plaintiffs' consent); Settlement Agreement [DE-67-2] at 4 ("Defendants, *without admitting liability*, agree that the Settlement is fair, adequate, and reasonable.") (emphasis added). Moreover, Plaintiffs' memorandum indicates, and the text of the Settlement Agreement directly states, that if the court were to not approve the proposed settlement, Defendants "reserve all rights to contest [the] certification" previously granted by the court or else "move for decertification." Settlement Agreement [DE-67-2] at 4; *see* Pls.' Mem. [DE-67-1] at 6–7. Thus, there is certainly some doubt about Plaintiffs' potential success on the merits and recovery at trial, and the first *Lynn's Food Stores* factor has been satisfied. *See Gorrell*, 2022 WL 3222003, at *3 (bona fide dispute where settlement agreement reflected that defendant denied liability, the parties described disputes about the amount of recoverable back wages, and the parties disputed whether defendant acted willfully); *Lorenzo v. Prime Commc'ns., L.P.*, No. 5:12-CV-69-H-KS, 2018 WL 10689660, at *2 (E.D.N.C. Feb. 14, 2018) (bona fide dispute where compromise reached after years of litigation, including extensive discovery, numerous pretrial hearings, and an appeal to the Fourth Circuit of defendant's motion to compel arbitration).

### 2. The Settlement Agreement is Fair and Reasonable

To determine whether the second *Lynn's Food Stores* factor is satisfied, i.e., whether a proposed settlement of FLSA claims is fair and reasonable, this court has in the past considered (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and the class members after receiving notice of the settlement, whether expressed directly or through failure to object; and (6) the probability of the plaintiffs' success on the merits

5

and the amount of the settlement in relation to the potential recovery. *See, e.g., Gorrell*, 2022 WL 3222003, at *3 (quoting *Vazquez-Aguilar*, 513 F. Supp. 3d at 681); *Lorenzo*, 2018 WL 10689660, at *1–2 (quoting *Robinson*, 2016 WL 3647616, at *1). As previously detailed *supra*, the Settlement Agreement at issue provides for a total settlement amount of $150,000, and of that sum, $81,934.86 is to be divided amongst all Plaintiffs as set forth below:

| Opt-In Plaintiff Name | Total Individual Payment |
|---|---|
| Bailey, Gloria | $ 1,938.66 |
| Barnes, Valeria | $ 21,153.63 |
| Chisum, Joyel | $ 8.13 |
| Faulkner, Charles | $ 11,286.24 |
| Gaither, Joyce | $ 7,661.51 |
| Henderson, Lakeisha | $ 2,259.75 |
| Howze, Tyrell | $ 275.62 |
| Johnson, Michael | $ 2,939.98 |
| Johnson, Yaiesha | $ 376.25 |
| Kyle, De'Anna | $ 6,935.62 |
| Lewis, Brenda | $ 1,906.58 |
| McArthur, Mary | $ 27.50 |
| Montague, Shirley | $ 7,714.27 |
| Murphy, Shirley | $ 421.41 |
| Powell, Tawanna | $ 984.38 |
| Privette, Pamela Jean | $ 8,276.83 |
| Spain, Demario | $ 2,404.44 |
| Stancil, Jayila | $ 65.63 |
| Thomas, Bridgette | $ 3,972.80 |
| Tisdale, Octavia | $ 240.63 |
| Verbal, Jamila | $ 1,085.00 |
| **TOTAL:** | $ 81,934.86 |

Am. Ex. A to Settlement Agreement [DE-69]. These figures are exclusive of the proposed service awards set aside for Named Plaintiff Johnson and Early Opt-In Plaintiffs Howze, Faulkner, and Kyle. *See id.* at 5.

6

Applying the above-listed factors, the court finds that the Settlement Agreement is fair and reasonable. As discussed in the previous section, the record establishes that the parties offered opposing views throughout the course of the litigation, *see supra* § II.1, but despite these differences, they negotiated the settlement at arms-length for several months to come up with a mutually agreeable solution, *see* [DE-55, -58, -60, -63]. The settlement negotiations process occurred after the parties had already engaged in extended substantive motions practice and informal discovery, *see* Settlement Agreement [DE-67-2] at 4, and at all times, both sides have been represented by experienced counsel who have zealously advocated for their clients' best interests. As Plaintiffs' counsel attests, absent settlement, the outcome of the FLSA claims is far from certain, although the time and funds spent pursuing and defending them would surely be significant. *See* Pls.' Mem. [DE-67-1] at 8–11. Additionally, counsel rightly acknowledges that while the parties are confident in their positions, there are inevitable uncertainties regarding both liability and damages presented by the prospect of a jury trial, and these uncertainties are avoided by settlement. *See id.* Thus, for these reasons, the court is satisfied that the parties have had sufficient time to assess their respective claims and defenses and have properly weighed the benefits of a settlement before trial.

The court is likewise satisfied that the proposed settlement resolves the uncertainties inherent in FLSA claims and provides Plaintiffs with a monetary recovery that is reasonably commensurate to or greater than what they could receive at trial. The Settlement Agreement explains that each Plaintiff's individual settlement payment has been calculated "based proportionally on [their] alleged overtime damages, and assuming a three (3) year statute of limitations applies, although Plaintiffs' Counsel did take into consideration the Defendants' asserted defenses as they pertain to the statute of limitations and liquidated damages." Settlement

7

Agreement [DE-67-2] at 5. To account for the statute of limitations and liquidated damages defenses, the Settlement Agreement provides for 100% backpay of alleged unpaid overtime wages for a two-year period, a reduced amount (10%) for the third year, and 25% of the alleged unpaid overtime wages as liquidated damages. Pls.' Mem. [DE-67-1] at 11. As Plaintiffs themselves acknowledge, "there is a broad range of potential recovery [at trial] based on disputed facts and law," especially in FLSA cases—and included within that range is the possibility that Plaintiffs could recover nothing. *Id.* at 10–11. The parties' compromise, which is reflected in the Settlement Agreement, balances the risks of trial and eliminates this possibility. Significantly, the Named Plaintiff and Early Opt-In Plaintiffs have also agreed to all terms of the settlement and have signed the Settlement Agreement confirming their endorsement. *See id.* at 11; Settlement Agreement [DE-67-2] at 10–13. Therefore, after considering all the relevant *Lynn's Food Stores* factors, the court finds that the Settlement Agreement is a fair and reasonable compromise of a bona fide dispute between the parties.[4]

### 3. The Parties' Agreement Does Not Impermissibly Frustrate the FLSA's Implementation

Judicial approval of FLSA settlements also involves reviewing whether the Agreement's provisions "impermissibly frustrate" the FLSA's implementation. *See Robinson*, 2016 WL 3647616, at *1. A "general release [of liability] is impermissibly overbroad" if it is "purportedly

---

[4] No hearing is needed to investigate the fairness of the Settlement Agreement. Class actions under Fed. R. Civ. P. 23 require a fairness hearing after the court preliminarily approves a proposed settlement. *Id.* (citations omitted). However, the statutory requirements pertaining to an FLSA collective action are "independent of, and unrelated to, the requirements for class action under Rule 23." *Haskett v. Uber Techs., Inc.*, 780 F. App'x 25, 27 (4th Cir. 2019) (per curiam) (quoting *Campbell v. City of L.A.*, 903 F.3d 1090, 1112 (9th Cir. 2018)) (rejecting collective members' arguments that Rule 23's notification requirements applied to proposed settlements of FLSA claims). While some courts have elected to hold fairness hearings before approving settlement agreements in FLSA collective actions, *see, e.g., Hall*, 2016 WL 5416582, at *6, the court finds that no such hearing is necessary in the instant case because the Settlement Agreement provides payments at or above what Plaintiffs could recover at trial. *See Gorrell*, 2022 WL 3222003, at *4 (finding the same).

8

waiving any possible claim against Defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," particularly where "[t]here has been no showing that [the] Plaintiff was or will be independently compensated for the broad release of claims unrelated to any dispute regarding FLSA coverage or wages due" or "that [the] Plaintiff has a full understanding of what he is releasing in exchange for a settlement payment." *Id.* at *4.

Here, the Settlement Agreement provides for the following release of claims:

35. Released Claims by Plaintiffs: Plaintiffs shall release Released Parties for the Released Period[5] from all federal, state, and local wage-and-hour claims, rights, demands, liabilities, and causes of action, including but not limited to claims for unpaid wages, overtime compensation, alleged business expenses, liquidated damages, interest, attorneys' fees, and expenses, including but not limited to claims under the Fair Labor Standards Act, North Carolina Wage and Hour Act, and any other federal, state, or local wage law. This release includes, but is not limited to, any claims, rights, demands, liabilities, or causes of action arising in any way relating to the classification of any Plaintiff as an independent contractor.

36. Released Claims by Named and Early Opt-In Plaintiffs: In addition to the release set forth in Paragraph 35, in exchange for the additional consideration of their Service Award Payments, Named and Early Opt-In Plaintiffs further release and forever discharge the Released Parties from any and all claims, charges, complaints, actions, causes of action, suits, grievances, controversies, disputes, demands, agreements, contracts, covenants, promises, liabilities, judgments, obligations, debts, damages (including, but not limited to, actual, compensatory, punitive, and liquidated damages), attorneys' fees, costs, and any other liabilities of any kind, nature, description, or character whatsoever that they may have against the Released Parties arising out any fact, condition, circumstance, or occurrence whatsoever, up to and including the entry date of an Order approving the Settlement, whether known or unknown, suspected or concealed, presently asserted or otherwise, except those that by law cannot be released.

Settlement Agreement [DE-67-2] at 6.

---

[5] The "Release Period" is defined as "the period of time between June 16, 2020 and the date of Court Approval of this settlement." Settlement Agreement [DE-67-2] at 3.

9

The above-listed release provisions do not frustrate the FLSA's implementation because they do not "sweep in all possible claims" against Defendants. *See Gorrell*, 2022 WL 3222003, at *4 (citing *Robinson*, 2016 WL 3647616, at *1) (finding that a "general release is impermissibly overbroad"). The first waiver, outlined in Paragraph 35, is applicable to all Plaintiffs but pertains only to other wage-and-hour claims arising prior to entry of the Settlement Agreement. *See* Settlement Agreement [DE-67-2] at 6 ¶ 35. Such claims relate to Plaintiffs' FLSA action and are properly waivable at settlement. *See Gorrell*, 2022 WL 3222003, at *4 (citing *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015) ("The parties have every right to enter into a settlement that waives claims relating to the existing [FLSA] suit in exchange for a settlement payment.")). The second waiver, found in Paragraph 36, applies only to the named and Early Opt-In Plaintiffs, and while it presents a closer question than the first, it does not render the Settlement Agreement unreasonable. The second release is a general—but time-limited—release, broadly worded to preclude the vast majority of claims Plaintiffs may have against Defendants arising prior to entry of the Settlement Agreement, including but not limited to the FLSA claims they have asserted in this case. *See* Settlement Agreement [DE-67-2] at 6. Under certain circumstances, this release could be deemed overbroad. However, in this context, where the Settlement Agreement provides that the Named and Early Opt-In Plaintiffs will be additionally compensated for the broad waiver of claims arising during the relevant time period, i.e., they will each receive a service award, each of the Plaintiffs subject to the general release have signed the Settlement Agreement to indicate their consent, and the Settlement Agreement acknowledges that not all claims may be waivable, there is no reason for the court to find that the waiver, while broad, is impermissibly so. *See Robinson*, 2016 WL 3647616, at *4.

## B. Attorneys' Fees

Plaintiffs seek, consistent with Settlement Agreement Paragraph 34 and the subsequent amendment, approval of the request to award Plaintiffs' counsel $62,083.14 of the total settlement amount in attorneys' fees. Pls.' Mem. [DE-67-1] at 12–20; Settlement Agreement [DE-67-2] at 5 ¶ 34; [DE-69]. Under the FLSA, prevailing plaintiffs are entitled to an award of reasonable attorneys' fees and costs. *See Jackson v. Estelle's Place, LLC*, 391 F. App'x 239, 242 (4th Cir. 2010) (citing 29 U.S.C § 216(b)). Plaintiffs bear the burden of proving what would constitute a reasonable award, *Har-Tzion v. Waves Surf & Sport, Inc.*, No. 7:08-CV-137-D, 2011 WL 3421323, at *1 (E.D.N.C. Aug. 4, 2011), even in circumstances such as those presented in the instant case, where Defendants do not object to the request for payment.

"In calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). The court does so by applying the *Johnson/Barber* factors. *See Hensley v. Eckerhart*, 461 U.S. 424, 433–34 & n.9 (1983) (explaining lodestar calculations and approving the twelve-factor test set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)); *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting *Johnson's* twelve-factor test). The *Johnson/Barber* factors include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

11

*Robinson*, 560 F.3d at 243–44 (quoting *Barber*, 577 F.2d at 226 n.28). Notably, though, a court need not list each Johnson/Barber factor or comment on those factors that do not apply. *See, e.g.*, *Bergstrom v. Dalkon Shield Claimants Trust (In re A.H Robins Co.)*, 86 F.3d 364, 376 (4th Cir. 1996) ("the district court considered those factors of the litany that are applicable to the present fee determination, and the district court is under no obligation to go through the inquiry of those factors that do not fit"). "After determining the lodestar figure, the 'court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" *Robinson*, 560 F.3d at 244 (quoting *Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008)) (internal quotation marks omitted). Once that has been completed, the court must award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.*

Plaintiffs attached several exhibits to support their request for $62,083.14 of the total settlement amount in attorneys' fees: the Declaration of Plaintiffs' counsel, Scott E. Brady, [DE-67-3] at 1–8; Attorney Brady's curriculum vitae, *id.* at 10–16; the curriculum vitae of Plaintiffs' counsel, Philip Bohrer, *id.* at 18–23;[6] billing time sheets reflecting 0.70 hours of paralegal time spent during the course of this action, worth $105.00 in total, *id.* at 28; and billing time sheets reflecting 190.40 hours of attorney time spent during the course of this action, worth $73,028.50 in total, *id.* at 29–56. In his Declaration, Attorney Brady states that

> Plaintiffs' Counsel's firms expended over 191 hours litigating this case through June 5, 2025. Thus, Plaintiffs' Counsel's lodestar is $73,133.50 as of June 16, 2025, with billing rates of $600.00 per hour for Philip Bohrer, $550.00 per hour for Scott Brady and Brian Kinsley, $150.00 per hour for paralegals, and $75.00 for other staff. Kinsley and I have been practicing law for 27 years, while Bohrer ha[s] been practicing law for 40 years.

---

[6] Plaintiffs are represented by Attorneys Brady and Bohrer of Bohrer Brady, LLC, but are also represented by Brian L. Kinsley of Cox, Stansberry & Kinsley, LLC. Attorney Kinsley did not file a curriculum vitae with the court, but Plaintiffs' memorandum contains information related to his education and work experience. *See* Pls.' Mem. [DE-67-1] at 19.

Brady Decl. [DE-67-3] at 7 (cleaned up) (footnote omitted). Additionally, Plaintiffs' memorandum directly addresses the *Johnson/Barber* factors, highlighting, for example, the risks Plaintiffs' counsel assumed in taking a complex FLSA case on a contingency basis, to the exclusion of other potentially lucrative work, as well as the time limitations imposed by Plaintiffs, who are generally dependent on every paycheck received and, as such, sought—and achieved—an early resolution to the litigation from their counsel. *See* Pls.' Mem. [DE-67-1] at 12–20.

Notably, Plaintiffs did not attach declarations from other attorneys with similar practices in this district indicating that the rates charged in this matter are reasonable and customary for the legal market in the Eastern District of North Carolina, and it was their burden to do so. *See Capps v. Newmark S. Region, LLC*, No. 5:18-CV-133-FL, 2021 WL 1876130, at *3 (E.D.N.C. May 10, 2021) ("[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.") (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)) (citations omitted). However, this lack of evidence by way of affidavit is not fatal to Plaintiffs' fee request; instead, it merely limits the types of information upon which the court can rely in determining the reasonableness of Plaintiffs' counsel's claimed hourly rates. *Id.* (citing *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997)). In the past, this has meant that the court has considered the information presented in counsel's billing records, as well as previous cases where attorneys' fees have been awarded in this district. *See id.*

13

Taking this approach with the billing records at issue, the court has found similar rates for similar work reasonable within the Eastern District of North Carolina, and awarded attorneys' fees accordingly.[7] *See Ovando v. Mountaire Farms Inc.*, No. 7:23-CV-4-M, 2025 WL 1733070, at *7 (E.D.N.C. May 15, 2025) (citing cases to support experienced plaintiffs' counsel's billing rate of $750.00 per hour in an FLSA/Rule 23 hybrid case, and recommending preliminary approval of the requested fees), *adopted sub nom Gomez Ovando v. Mountaire Farms*, 2025 WL 1731997 (E.D.N.C. June 20, 2025). Attorneys Brady and Kinsley have both been practicing law for 27 years, while Attorney Bohrer has been practicing law for 40 years, Brady Decl. [DE-67-3] at 7, and all three lawyers have extensive employment law and mass tort/collective action/class action experience, *id.* at 10–16, 18–23; Pls.' Mem. [DE-67-1] at 19. Furthermore, as Plaintiffs' memorandum attests, "Plaintiffs' Counsel's labor included among other things, investigation of the claims and Defendants, research, witness interviews, drafting and editing pleadings, informal discovery, client contact and surveys, telephone conferences with clients and opposing counsel, document review, damage calculations, and negotiating the settlement. All hours expended were a direct benefit to Plaintiffs." Pls.' Mem. [DE-67-1] at 13. Defendants do not challenge Plaintiffs' counsel's claimed hourly rates or the number of hours claimed, and Plaintiffs' counsel attained a favorable settlement for their clients when such an outcome was far from certain. Thus, considering all these factors, as well as the inherent complexity of FLSA actions, the court finds that the asserted rates of $600.00 per hour for Attorney Bohrer, $550.00 per hour for Attorneys Brady and

---

[7] Plaintiffs' memorandum notes that counsel's claimed hourly rates are "reasonable in light of the customary fee awards in fee shifting cases for the Middle District of North Carolina." Pls.' Mem. [DE-67-1] at 14–15. While this case was transferred from the Middle District, the customary fee awards in that court are irrelevant here. *See Gorrell*, 2022 WL 3222003, at *6 ("Citations to decisions from other districts do not speak to the prevailing market rates in the 'relevant community.'") (citing *Robinson*, 560 F.3d at 244).

Kinsley, $150.00 per hour for paralegals, and $75.00 for other legal staff are reasonable and roughly within the range of customary rates for FLSA cases in North Carolina federal courts.

Turning to the second component of the lodestar calculation, i.e., whether the number of hours Plaintiffs' counsel claim to have worked on the instant matter is reasonable, "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Gorell*, 2022 WL 3222003, at *7 (quoting *Hensley*, 461 U.S. at 434). As a result, "[t]he [c]ourt should not compensate plaintiff's counsel for hours which it finds excessive, redundant or otherwise unnecessary." *Id.* (quoting *Rivers v. Ledford*, 666 F. Supp. 2d 603, 606 (E.D.N.C. 2009) (internal quotation marks omitted)). That said, the "essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Id.* (citing *Fox v. Vice*, 563 U.S. 826, 838 (2011)). Phrased differently, "trial courts need not, and indeed should not, become green-eyeshade accountants" when calculating reasonable fee awards. *Id.* (citing same) (emphasizing that "the determination of fees 'should not result in a second major litigation'").

Bearing these guidelines in mind and noting the complexity of FLSA actions, the court has reviewed the paralegal and attorney billing records and considered the total 191.10 billable hours claimed. Without any objection from defense counsel and finding no apparent discrepancies within the billing records that require judicial resolution, the court finds that the total number of billable hours claimed—190.40 hours of attorney time and 0.70 hours of paralegal time—are reasonable. Plaintiffs represent that their total lodestar as of June 16, 2025 is $73,133.50, but that the agreed-upon lesser amount of $62,083.14 will compensate them for all past work and "does not include any work to be performed by Plaintiffs' Counsel in the future for administering the settlement." Pls.' Mem. [DE-67-1] at 20. The court agrees that the requested sum of $62,083.14 is a fair and reasonable deviation from the lodestar and finds that any further adjustments are unwarranted

15

based on either the *Johnson/Barber* factors or the second and third steps of the fee award determination. Given the fully successful outcome Plaintiffs achieved on the only claims they brought, there is no need to "subtract fees for hours spent on unsuccessful claims unrelated to successful ones" or scale the lodestar figure to account for the degree of Plaintiffs' success. *See Gorrell*, 2022 WL 3222003, at *13–14 (declining to adjust lodestar based on *Johnson/Barber* factors or the second and third steps of the fee determination) (citing *McAfee v. Bozcar*, 738 F.3d 81, 88 (4th Cir. 2013) (identifying the second and third steps)). Consequently, the court approves the award of $62,083.14 of the total settlement amount to Plaintiffs' counsel in attorneys' fees, as outlined in Paragraph 34 of the Settlement Agreement and the subsequent amendment.

## C. Costs

Pursuant to Paragraph 34 of the Settlement Agreement, Plaintiffs seek court approval to receive $482.00 of the total settlement amount for "expenses incurred in the Action." Pls.' Mem. [DE-67-1] at 21; Settlement Agreement [DE-67-2] at 5 ¶ 34. The FLSA allows prevailing plaintiffs to recover of the "costs of the action," 29 U.S.C. § 216(b), but does not define "costs." The Fourth Circuit, however, has held that district courts retain the "same discretion" in assessing costs as they do when awarding reasonable attorneys' fees. *Gorell*, 2022 WL 3222003, at *14 (citing *Roy v. Cnty. of Lexington, S.C.*, 141 F.3d 533, 549 (4th Cir. 1998)). Furthermore, as is the case for parties seeking attorneys' fees, the moving party retains the burden of proving the reasonableness of the costs they claim. *Id.* (citing *Andrade v. Aerotek, Inc.*, 852 F. Supp. 2d 637, 645 (D. Md. 2012)).

Here, Plaintiffs' request for $482.00 in costs is fairly nondescript, *see* Pls.' Mem. [DE-67-1] at 21 ("These costs[] are fair, reasonable and necessary for the conclusion of this litigation and, as such, should be approved."), however, it is supported by two different documents: one entitled "Time & Expenses Itemization for Michael Johnson v. PHP," and another titled "Bohrer Law Firm,

16

LLC Account QuickReport—All Transactions," Brady Decl. [DE-67-3] at 25–26. These exhibits reflect that the requested sum is comprised of the $402.00 complaint filing fee, the $50.00 fee Bohrer Brady, LLC paid to file notices of appearance for Attorneys Bohrer and Brady, and the $30.00 payment Bohrer Brady, LLC made to send text messages to potential collective action members containing relevant opt-in information. *Id.* Defendants do not object to the nature or amount of these claimed expenses, and they are precisely the kind of expenses normally found to be compensable under the FLSA. *See Gorrell*, 2022 WL 3222003, at *14–15 (awarding $402.00 in filing fees, $990.71 in mailing expenses, $4,681.37 for third-party email, text, and website notification services, $145.72 in travel and meal expenses, and $416.22 in research-related expenses) (citing *Andrade*, 852 F. Supp. 2d at 645) (noting that compensable litigation expenses under the FLSA have been generally understood to include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.") (quoting *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988)). Accordingly, the court approves an award of $482.00 from the total settlement amount to Plaintiffs' counsel for litigation costs, as outlined in Paragraph 34 of the Settlement Agreement.

### D. Service Awards

Consistent with the terms of Paragraph 33 of the Settlement Agreement, Plaintiffs request that the court approve service awards in the following amounts to the Named Plaintiff and Early Opt-In Plaintiffs: $2,500 to Named Plaintiff Johnson; $1,000.00 to Early Opt-In Plaintiff Faulkner; $1,000.00 to Early Opt-In Plaintiff Howze; and $1,000.00 to Early Opt-In Plaintiff Kyle. Pls.' Mem. [DE-67-1] at 21–22; Settlement Agreement [DE-67-2] at 5 ¶ 33. Plaintiffs contend that these service awards, which comprise $5,500.00 of the total settlement amount, should be granted to recognize the Named and Early Opt-In Plaintiffs' efforts on behalf of all Plaintiffs. Pls.' Mem.

[DE-67-1] at 21. Plaintiffs assert that the Named Plaintiff and Early Opt-In Plaintiffs worked closely with Plaintiffs' counsel to provide "background information about their relationship with Defendant PHP, about Defendants' policies and practices, and about the allegations in this lawsuit through numerous phone calls and emails, provided documents in support throughout litigation, and provided other insight." *Id.* at 21–22; Brady Decl. [DE-67-2] at 7–8. The Named Plaintiff in particular initiated this lawsuit, reviewed pleadings, and spoke to witnesses; he also "agreed to put his name on a lawsuit in the public docket, and, in an environment with very little job stability, [ ] has undertaken a substantial direct and indirect risk in the community and in his field by being the face[] of the litigation in order to participate in this case on behalf of the collective members." Pls.' Mem. [DE-67-1] at 22; Brady Decl. [DE-67-3] at 8.

The court has previously approved service awards in varying amounts to certain plaintiffs based on their work on behalf of the settlement class. *See, e.g.*, *Gorrell*, 2022 WL 3222003, at *5; *Medina v. Westdale Brentmoor, LLC*, No. 5:19-CV-142-D, 2021 WL 1950025, at *6 (E.D.N.C. May 14, 2021); *Speaks v. U.S. Tobacco Coop., Inc.*, No. 5:12-CV-729-D, 2018 WL 988083, at *3 (E.D.N.C. Feb. 20, 2018). Here, there is no reason to deviate from that precedent, as Plaintiffs' counsel has attested to the important contributions made by the Named Plaintiff and Early Opt-In Plaintiffs to the prosecution and fair resolution of this case on behalf of the opt-in Plaintiffs. Specifically, contends that these Plaintiffs "advanced and supported the positions of the entire collective, and directly and positively contributed to the factual arguments that were used to obtain the settlement and recovery." Pls.' Mem. [DE-67-1] at 22. Defendants do not object to this characterization or to the dedication of $5,500.00 of the total settlement amount for the described service awards. Accordingly, the court finds that the service awards outlined in Paragraph 33 of the Settlement Agreement are fair and reasonable.

18

## III. Conclusion

For the reasons stated herein, the court GRANTS the motion to approve settlement, [DE-67], and approves the Settlement Agreement, [DE-67-2]. As provided by the Settlement Agreement, Defendants shall pay a total settlement amount of $150,000.00 to Plaintiffs, of which $81,934.86 will be divided amongst all Plaintiffs as set forth in [DE-69-1], $62,083.14 will be awarded to Plaintiffs' counsel in attorneys' fees, $482.00 will be awarded to Plaintiffs' counsel as compensation for reasonably incurred litigation costs, and $5,500.00 will be distributed as follows to the Named and Early Opt-In Plaintiffs as a service award: $2,500 to Named Plaintiff Johnson; $1,000.00 to Early Opt-In Plaintiff Faulkner; $1,000.00 to Early Opt-In Plaintiff Howze; and $1,000.00 to Early Opt-In Plaintiff Kyle.

SO ORDERED, this the 24th day of September, 2025.

Robert B. Jones, Jr.
United States Magistrate Judge